**'09 CIV 1750**

JAMES CLARKSON
Acting Regional Director
New York Regional Office
Attorney for Plaintiff
Securities and Exchange Commission
3 World Financial Center – RM 400
New York, New York 10281-1022
(212) 336-1100

2009 MAR -6 PM 12: 06

FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,                    :

                                    Plaintiff,          :     Civ. No.

                  - against -                           :     **2:09-MC-62**

WG TRADING INVESTORS, L.P.,                             :     <u>COMPLAINT</u>
WG TRADING COMPANY, LIMITED PARTNERSHIP,               :
WESTRIDGE CAPITAL MANAGEMENT, INC.,                    :
PAUL GREENWOOD and STEPHEN WALSH,                      :

                                    Defendants,         :

                  - and-                                :

ROBIN GREENWOOD and JANET WALSH,                        :

                                    Relief Defendants.  :

------------------------------------------------------x

## <u>COMPLAINT</u>

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

defendants WG Trading Investors, L.P. ("WGTI"), WG Trading Company, Limited Partnership

("WGTC"), Westridge Capital Management, Inc. ("Westridge"), Paul Greenwood

("Greenwood") and Stephen Walsh ("Walsh") (collectively, the "Defendants"), and against relief

defendants Robin Greenwood ("R. Greenwood") and Janet Walsh ("J. Walsh") (collectively, the

"Relief Defendants"), alleges as follows:

## SUMMARY

1.      The Commission brings this emergency enforcement action to halt ongoing securities fraud involving the misappropriation of hundreds of millions of dollars of investor assets by Greenwood and Walsh through their affiliated entities Westridge (a registered investment adviser), WGTC (a registered broker dealer) and WGTI (an unregistered investment vehicle). From at least 1996 to the present, Greenwood and Walsh have used their affiliated entities to engage in an egregious investment fraud. Greenwood and Walsh have used client money invested in WGTI as their personal piggy-bank to furnish lavish and luxurious lifestyles, which include the purchase of multi-million dollar homes, a horse farm, cars, horses, and rare collectibles such as Steiff teddy bears.

2.      Since at least 1996, the Defendants have solicited a number of institutional investors, including several educational institutions and public pension and retirement plans, by promising to invest their money in an "enhanced equity index" strategy that involves purchasing and selling equity index futures and engaging in equity index arbitrage trading. However, instead of investing the money as promised, Greenwood and Walsh have simply misappropriated investor funds for their own personal use. Of the $667 million Westridge clients have invested in WGTI, Greenwood and Walsh have misappropriated as much as $554 million, and have provided some of the investors' money to their spouse and ex-spouse, respectively, Relief Defendants R. Greenwood and J. Walsh.

3.      This fraud is ongoing. As recently as February 6, 2009, Defendants obtained a $21 million investment from an existing client, a large state educational institution. This investor has not been able to ascertain the safety and security of its new investment because the

2

Defendants have not responded to any of the investor's numerous requests and inquires over the last two weeks.

4.    Based on the past and present misconduct of Greenwood and Walsh, as alleged more fully below, there is a real possibility that Greenwood and Walsh will use their affiliated entities to continue their long-standing practice of misappropriating and dissipating investor assets that otherwise would be available to satisfy the Commission's claims.

## VIOLATIONS

5.    By virtue of the conduct alleged herein:

    a.    The Defendants, directly or indirectly, singly or in concert, have engaged and are engaging in acts, practices and courses of business, that constitute violations of Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a);

    b.    The Defendants, directly or indirectly, singly or in concert, have engaged and are engaging in acts, practices and courses of business that constitute violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and

    c.    Defendants Westridge, Greenwood and Walsh directly or indirectly, singly or in concert, have engaged and are engaging in acts, practices and courses of business, that constitute violations of Sections 206(1), 206(2) and 206(4) of the Investment Advisers Act of 1940 (the "Advisers Act") [15 U.S.C. §§ 80b-6(1), 80b-6(2) and 80b-6(4)] and

Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

6.       Unless the Defendants are preliminarily and permanently restrained and enjoined, they will continue to engage in the acts, practices and courses of business set forth in this Complaint and in acts, practices and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

7.       The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)] and Section 209 of the Advisers Act [15 U.S.C. § 80b-9], seeking to restrain and enjoin permanently the Defendants from engaging in the acts, practices and courses of business alleged herein.

8.       The Commission also seeks, as immediate relief, a temporary restraining order against the Defendants, asset freezes against the Defendants and certain assets of the Relief Defendants, verified accountings from the Defendants and Relief Defendants, appointment of a receiver, expedited discovery, an order prohibiting the Defendants and Relief Defendants from destroying or altering documents, and an order enjoining the Defendants and any third party from filing for bankruptcy on behalf of the Defendants without leave of this Court.

9.       Finally, the Commission seeks a judgment ordering the Defendants and Relief Defendants to disgorge ill-gotten gains with prejudgment interest thereon, and ordering the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].  The Commission also seeks a judgment ordering Westridge, Greenwood and Walsh to pay civil money penalties pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

4

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action pursuant to Section 22(a) of the

Securities Act [15 U.S.C. § 77v(a)], Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§

78u(e) and 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].

11.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §

1391. The Defendants, directly and indirectly, have made use of the means and instrumentalities

of interstate commerce, or of the mails, in connection with the transactions, acts, practices and

courses of business alleged herein. A substantial part of the events giving rise to the

Commission's claims occurred in this judicial district and at least one of the Defendants resides

in the district. In particular, WGTC is a member firm of the New York Stock Exchange

("NYSE"), which is located in this distr ict; WGTI maintained an account with a financial

institution headquartered in this district; and Greenwood resides in North Salem, New York,

which is located in this district.

## DEFENDANTS

12.    **WGTI** is a Delaware limited partnership with its principal office located in

Greenwich, Connecticut. The general partners are Greenwood and Walsh. WGTI is an investor

and limited partner in WGTC. WGTI has no independent business operations or activities, but

merely serves as an investment vehicle for Greenwood and Walsh. WGTI has been described as

a "pass-through" investment vehicle for certain investors and clients of Westridge, including the

WCM Fund.

13.    **WGTC** is a Delaware limited partnership and a registered broker dealer with its

principal office in Greenwich, Connecticut, and other offices in Jersey City, New Jersey and

North Hills, New York. The general partners of WGTC are Greenwood and Walsh. Investors in WGTC are granted limited partnership interests in WGTC. Investor clients of Westridge invested in WGTC via WGTI in one of two ways: (i) by investing with WGTI directly or (ii) by investing in the WCM Fund, which invested directly with WGTI. Under either investment route, the Defendants represented that WGTI would invest the money with WGTC for investment in the index arbitrage strategy.

14.    **Westridge**, a Delaware corporation located in Santa Barbara, California, is an investment adviser registered with the Commission. It is owned by Greenwood, Walsh and one other individual who also serves as its Director and Chief Compliance Officer. Greenwood and Walsh are control persons of Westridge. Westridge provides investment advisory services to the WCM Fund and maintains separately managed accounts for other clients who wish to invest in the Defendants' "enhanced index" strategy.

15.    **Greenwood**, age 61, resides in North Salem, New York. He is the co-general partner, Chief Operating Officer and Chief Financial Officer of WGTC, a registered broker dealer. Greenwood is also a minority owner and control person of Westridge. Greenwood is a co-general partner, along with Walsh, of WGTI. Greenwood holds Series 3 and 63 licenses.

16.    **Walsh**, age 64, resides in Sands Point, New York. He is the co-general partner, Chief Executive Officer and the senior registered options principal of WGTC, a registered broker dealer. Walsh is also a minority owner and control person of Westridge. Walsh also is a co-general partner, along with Greenwood, of WGTI. Walsh holds Series 3, 4 and 40 licenses.

### RELIEF DEFENDANT

17.    **J. Walsh**, age 53, resides in Longboat Key, Florida. She is the ex-wife of Walsh.

6

Walsh caused certain investor funds to be transferred from WGTI's account to an account controlled by J. Walsh.

18.    **R. Greenwood**, age 57, resides in North Salem, New York. She is the wife of .Greenwood. Greenwood caused certain investor funds to be transferred from WGTI's account to an account controlled by R. Greenwood.

## RELATED ENTITIES

19.    **WCM Fund** is a listed commodity pool and investment fund organized under the laws of the British Virgin Islands with a registered address at Todman Building, Main Street, P.O. Box 3140, Road Town, Tortola, British Virgin Islands. WCM Fund has approximately 16 investors, which include university foundations and retirement and pension plans.

20.    **National Futures Association ("NFA")** is an industry-wide, self-regulatory organization for the U.S. futures industry.

## FACTS

**The Represented Investment Strategy and Flow of Funds**

21.    The Defendants market an "enhanced equity index management" investment strategy that consists of two components. The first is exposure to a stock index, such as the S&P 500, through futures trading. Westridge manages this aspect of the trading strategy and purchases long positions in equity index futures that provided exposure to the entire index. Westridge requires that 5% of an investor's assets be apportioned to this strategy. Because the account is highly leveraged, this 5% collateralizes twenty times as much exposure to the chosen futures index. Westridge further requires 10% of the investor's assets to be retained for margin management purposes associated with the futures position. The second component of the

7

strategy is "enhanced cash management" through an index arbitrage strategy. Pursuant to this strategy, S&P 500 or other futures are sold short and the underlying equities in the index are purchased long in an arbitrage transaction that locks in a stated rate of interest for a stated period of time. Depending on market conditions, the reverse strategy may be executed; that is, selling the underlying equities short and purchasing the futures long. The 85% of investors' assets that is dedicated to the arbitrage strategy is supposed to be invested with WGTC where its traders execute the strategy.

22.     Westridge offered investors two ways to invest in the enhanced cash management index arbitrage strategy at WGTC: (i) through the WCM Fund or (ii) through a separate account managed by Westridge pursuant to an investment management agreement between Westridge and the investor. There are approximately 16 investors in the WCM Fund and there are approximately 10 investors who have separately managed accounts that invest directly with WGTI.

23.     Regardless of whether the Westridge client invests directly through a separately managed account or indirectly through WCM Fund, the 85% designated for the index arbitrage strategy is invested, in the first instance, with WGTI. The investor, either the WCM Fund or the client with a separately managed account, receives a promissory note from WGTI reflecting the principal investment. These notes are generally signed by Greenwood on behalf of WGTI.

24.     The WGTI promissory notes from 1998 and 1999 to certain Westridge clients clearly state that WGTI will send the investors' money to WGTC for use in the index arbitrage trading strategy. The notes state: "The Borrower [WGTI] shall invest each borrowing of Original Principal in a limited partnership interest in WG Trading Company Limited Partnership

8

. . . ." It appears that some of these promissory notes were re-written sometime after 2002 to make reference to the payment of interest on the principal investment at a rate equal to a "hypothetical" investment in WGTC.

25.     Even though Greenwood and Walsh appear to have altered the language of the promissory notes somewhat to make reference to a "hypothetical" return, they continued to tell investors in meetings and in marketing materials that the 85% portion of the investors' assets designated for the stock index arbitrage strategy would "pass through" WGTI and be invested in WGTC.

26.     Among the many false representations Defendants made to investors and potential investors are those found in Defendants' marketing and promotional materials, including the following:

      a.  "The remaining [85%] of cash available is allocated to the Equity Index Arbitrage, in order to generate the enhancement";

      b.  "Remaining 85% invested in index arbitrage enhanced cash management";

      c.  "As of June 30, 2006, . . . 80% [of the funds] are managed by WG Trading [Company] in an index arbitrage cash enhancement strategy";

      d.  "There is no [market] timing as portfolios are fully invested. . . [c]ash per se is fully invested at all times in either the Westridge liquidity pool supporting the index exposure or the equity index arbitrage exposure";

      e.  "[T]he 85% invested in the equity index arbitrage which [sic] is 100% fully invested in stocks and futures"; and

      f.  "For every $100.00 invested in the strategy . . . $85.00 [is] [i]nvested in the cash enhancement strategy (Equity Index Arbitrage)."

27.     As alleged below, the Defendants' many representations to investors and potential investors, i.e., that 85% of investor assets would be "fully" invested in WGTC in the index

arbitrage trading strategy, were false and misleading.

28.     Rather than "fully" investing the 85% of investor assets in WGTC for use in the
index arbitrage trading strategy, as represented, Walsh and Greenwood invested a mere fraction
of this money in WGTC and simply misappropriated the rest to pay for their lavish and luxurious
lifestyles.

**NFA's Audit of Greenwood, Walsh and Their Affiliates**

29.     On February 5, 2009, NFA began an audit of Greenwood, Walsh and their
affiliated entities. During the course of the audit, NFA discovered a $324 million promissory
note payable to the WCM Fund by WGTI.

30.     NFA also reviewed WGTI's balance sheet, dated as of December 31, 2008, which
indicated that WGTI had a total of $667 million in investments from WCM Fund and 10
separately managed Westridge accounts. The investments were recorded as notes payable to
each of the investors and the notes reflected the current assets they had invested with WGTI for
use in the WGTC stock index arbitrage trading strategy.

31.     WGTI's balance sheet also showed that Greenwood and Walsh had caused WGTI
to invest only $94 million in WGTC for use in the stock arbitrage trading strategy. The $573
million difference between the investors' total assets ($667 million) and the investment in
WGTC ($94 million) was reflected mostly in "notes payable" to WGTI from Greenwood and
Walsh, as well as some other investments and entities that Walsh and Greenwood appear to own
and control.

32.     In particular, NFA discovered $554 million in personal promissory notes that are
signed by Greenwood and Walsh. These personal promissory notes date as far back as 1996 and

10

state that they are payable to WGTI by Greenwood (in the amount of $293 million) and Walsh
(in the amount of $261 million).

33.    After discovering the personal promissory notes, NFA immediately requested a
meeting with Greenwood and Walsh to locate and confirm the safety and security of the
investors' $667 million in assets that WGTI was supposed to have invested with WGTC.
Greenwood and Walsh refused to meet with NFA and failed to cooperate with its audit.
Thereafter, on February 12, 2009, NFA took action to suspend Greenwood and Walsh from NFA
membership.

**Greenwood and Walsh Misappropriated As Much as $554 Million**
**Of Investor Assets Over the Course of a Decade**

34.    Between 1996 and 2008, Greenwood and Walsh used the WGTI account as their
personal piggy-bank. In order to carry-out their fraudulent scheme, they had an employee at
WGTC (the "Employee") routinely wire funds from the WGTI account to the personal accounts
of Greenwood, Walsh and Relief Defendants R. Greenwood (Greenwood's wife) and J. Walsh
(Walsh's ex-wife). Greenwood and Walsh also had the Employee make wire transfers from the
WGTI account to pay third-parties directly to cover Greenwood's and Walsh's personal
expenses. The money transferred from the WGTI account, which constituted the investors'
money, was used by Greenwood and Walsh to furnish their extravagant and luxurious life-styles,
which included the purchase of multi-million dollars homes, a horse farm, cars, horses and
expensive collectible items.

35.    Each year, the Employee prepared the so-called "promissory notes" for
Greenwood and Walsh to sign. Greenwood and Walsh generally balked at signing the notes, but
eventually did so after the Employee insisted that they sign them. The Employee insisted on the

11

notes in order to keep a record of the hundreds of millions of dollars that Greenwood and Walsh were taking from the WGTI account. Greenwood and Walsh typically signed the notes in March or later in the year.

36.     In total, Greenwood and Walsh signed promissory notes in which they "promised" to repay WGTI $554 million. Greenwood's notes totaled $293 million and Walsh's notes totaled $261 million. All of the notes were signed and dated January or March for the years 1996 and 1998 through 2008. The notes purported to reflect the "general partner's share of · losses, withdrawals and payments" during the previous year. The notes do not reflect that any interest is payable on the principal, nor do they bear any terms and conditions one would expect to find in a bona fide promissory note.

**Money Transfers to the Relief Defendants**

37.     During the course of their fraudulent scheme, Greenwood and Walsh also instructed the Employee to transfer investor money from the WGTI account to Relief Defendants R. Greenwood and J. Walsh.

38.     From June 20, 2007 to December 15, 2008, Greenwood caused the Employee to make at least 19 wire transfers totaling at least $47,500 from the WGTI account to an account owned by his wife, R. Greenwood.

39.     From July 6, 2007 to January 9, 2009, Walsh caused the Employee to make at least 4 wire transfers totaling at least $2 million from the WGTI account to an account owned by his ex-wife, J. Walsh.

40.     Accordingly, the Relief Defendants have directly received proceeds derived from the Defendants misconduct, and these proceeds constitute ill-gotten gains that must be disgorged.

12

**The Fraud is Ongoing**

41.    This fraud is ongoing.  On January 21, 2009, Greenwood met with representatives

of the University of Pittsburgh, a public educational institution, to solicit further investments

with the Defendants.  As recently as February 6, 2009, the Defendants received a new $21

million investment from the University of Pittsburgh.  The University of Pittsburgh has been an

advisory client of Westridge since 2002 and maintains a separately managed account with

Westridge that supposedly invested in the WGTC index arbitrage trading strategy though WGTI.

42.    After learning about the NFA audit and membership bars against Greenwood and Walsh,

representatives of The University of Pittsburgh made repeated attempts to contact Greenwood

and Walsh to ascertain the safety of its investments.  The University of Pittsburgh also made a

written demand on Defendants on February 16, 2009 seeking the return of the new $21 million

investment.  Greenwood and Walsh did not respond to the University of Pittsburgh's redemption

request or to its inquiries about the investments.  The University of Pittsburgh has not been able

to ascertain the safety and security of its investments with Defendants, which total approximately

$65 million.

43.    On February 20, 2009, the University of Pittsburgh and Carnegie Mellon

University, another educational institution that invested with Defendants, filed a civil action

against Defendants, and others, seeking the return of their investments.  Carnegie Mellon Univ.,

et al. v. Westridge Capital Mgmt., Inc., et al., 2:09-cv-215 (W.D. Pa. Feb. 20, 2009).  By Order

dated that same day, February 20, 2009, the Court granted, in part, certain emergency relief.

44.    Based on the past and present misconduct of Greenwood and Walsh, there is a

strong possibility that Greenwood and Walsh will use their affiliated entities to continue their

13

long-standing practice of misappropriating and dissipating investor assets in WGTI that otherwise would be available to satisfy the Commission's claims.

### FIRST CLAIM FOR RELIEF
### Violations of Section 17(a) of the Securities Act
### (All Defendants)

45.     Paragraphs 1 through 44 are re-alleged and incorporated by reference as if fully set forth herein.

46.     From at least March 1, 1996 through the present, the Defendants, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by the use of the mails, directly and indirectly, have employed and are employing devices, schemes and artifices to defraud.

47.     From at least March 1, 1996 through the present, the Defendants, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by the use of the mails, directly and indirectly, have obtained and are obtaining money and property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and have engaged and are engaging in transactions, practices or courses of business which operate as a fraud and deceit upon their investors.

48.     The Defendants knew or were reckless in not knowing that the representations set forth herein were false and misleading.

14

49.     By reason of the activities described herein, the Defendants have violated and are violating Section 17(a) of the Securities Act [15 U.S.C. §77q(a)].

## SECOND CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act
### and Rule 10b-5
### (All Defendants)

50.     Paragraphs 1 through 49 are re-alleged and incorporated by reference as if fully set forth herein.

51.     From at least March 1, 1996 through the present, the Defendants, in connection with the purchase and sale of securities, directly and indirectly, by the use of the means and instrumentalities of interstate commerce or of the mails, have employed and are employing devices, schemes and artifices to defraud; have made and are making untrue statements of material fact and have omitted and are omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and have engaged and are engaging in acts, practices and courses of business which operate as a fraud and deceit upon investors.

52.     The Defendants knew or were reckless in not knowing that the representations set forth herein were false and misleading.

53.     By reason of the activities described herein, the Defendants have violated and are violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5], promulgated thereunder.

15

### THIRD CLAIM FOR RELIEF
#### Violations of Sections 206(1), 206(2) and 206(4)
#### of the Advisers Act and Rule 206(4)-8
#### (Westridge, Greenwood and Walsh)

54.    Paragraphs 1 through 53 are re-alleged and incorporated by reference as if fully set forth herein.

55.    From at least March 1, 1996 through the present, Westridge, Greenwood and Walsh, as investment advisers, directly and indirectly, by the use of the means and instrumentalities of interstate commerce or of the mails, have employed and are employing devices, schemes and artifices to defraud investors, and have engaged and are engaging in transactions, practices and courses of business which operated as a fraud and deceit upon these investors.

56.    Westridge, Greenwood and Walsh knew or were reckless in not knowing that the representations set forth herein were false and misleading.

57.    By reason of the activities described herein, Westridge, Greenwood and Walsh have violated and are violating Sections 206(1), 206(2) and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2) and 80b-6(4)], and Rule 206(4)-8 [17 C.F.R. § 275.206(4)-8], promulgated thereunder.

### FOURTH CLAIM FOR RELIEF
#### Aiding and Abetting Violations of Sections 206(1), 206(2) and 206(4)
#### of the Advisers Act and Rule 206(4)-8
#### (Greenwood and Walsh)

58.    Paragraphs 1 through 57 are re-alleged and incorporated by reference as if fully set forth herein.

59.    From at least March 1, 1996 through the present, Greenwood and Walsh, directly

16

and indirectly, singly or in concert, aided and abetted Westridge's violations of Sections 206(1), 206(2), and 206(4) of the Advisers Act and Rule 206(4)-8. Specifically, Greenwood and Walsh knowingly provided substantial assistance to Westridge in making the materially false and misleading representations and omissions and misappropriations of investor assets alleged herein.

60.    The Defendants knew or were reckless in not knowing that the representations set forth herein were false and misleading.

61.    By reason of the activities described herein, Defendants Greenwood and Walsh aided and abetted and are aiding and abetting Westridge's violations of Sections 206(1), 206(2) and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2) and 80-b6(4)] and Rule 206(4)-8 [17 C.F.R. § 275.206(4)-8], promulgated thereunder.

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court grant the following relief:

## I.

An Order temporarily and preliminarily, and a Final Judgment permanently, restraining and enjoining the Defendants, their agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

17

**II.**

An Order temporarily and preliminarily, and a Final Judgment permanently, restraining and enjoining Defendants Westridge, Greenwood and Walsh, their agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Sections 206(1), 206(2) and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2) 80b-6(4)] and Rule 206(4)-8 [17 C.F.R. § 275.206(4)-8].

**III.**

An Order directing the Defendants, their agents, banks, debtors, bailees, servants, employees, and attorneys-in-fact, and those persons in active concert or participation with the Defendants who receive actual notice of said Order by personal service, facsimile, or otherwise, and each of them, to hold and retain within their control, and otherwise prevent any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal of any of the Defendants' assets, funds or other properties of any kind wherever situated, and assets over which said Defendants have control by signatory authority or otherwise.

**IV.**

An Order restraining and enjoining Greenwood, his agents, banks, debtors, bailees, servants, employees, and attorneys-in-fact, and those persons in active concert or participation with him, and any other persons or entities, including, but not limited to, persons or entities who hold a security interest in the property identified below, who receive actual notice of said Order by personal service, facsimile, or otherwise, and each of them, from taking any action to transfer, pledge, seize, sell, foreclose, encumber, assign, dissipate, conceal or otherwise taking any action

18

whatsoever that would impact or impair the value of the residence located at 16 Wheeler Road, North Salem, NY 10560.

## V.

An Order restraining and enjoining Walsh, his agents, banks, debtors, bailees, servants, employees, and attorneys-in-fact, and those persons in active concert or participation with him, and any other persons or entities, including, but not limited to, persons or entities who hold a security interest in the property identified below, who receive actual notice of said Order by personal service, facsimile, or otherwise, and each of them, from taking any action to transfer, pledge, seize, sell, foreclose, encumber, assign, dissipate, conceal or otherwise taking any action whatsoever that would impact or impair the value of the residence located at 7 Half Moon Lane, Sands Point, NY 11050.

## VI.

An Order directing Relief Defendants R. Greenwood and J. Walsh, their agents, banks, debtors, bailees, servants, employees, and attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of said Order by personal service, facsimile, or otherwise, and each of them, to hold and retain within their control, and otherwise prevent any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal of any assets or funds, including the assets and funds in the Manufactures Traders Trust Account held in the name of R. Greenwood, and the Bank of America, N.A. account held in the name of J. Walsh.

19

## VII.

An Order directing each of the Defendants and each Relief Defendant to file with this Court and serve upon the Commission, within three (3) business days, or within such extension of time as the Commission staff agrees to, a verified written accounting, signed by each Defendant under penalty of perjury, setting forth:

(1)     All assets, liabilities and property currently held directly or indirectly by or for the benefit of such Defendant and Relief Defendant, including, but not limited to, bank accounts, brokerage accounts, investments, business interests, loans, lines of credit, and real and personal property wherever situated, describing each asset and liability, its current location and amount;

(2)     All money, property, assets, and other income received by such Defendant and Relief Defendant, or for their direct or indirect benefit, in or at any time from March 1, 1996 to the date of the accounting, describing the source, amount, disposition and current location of each of the items listed;

(3)     All assets, funds, securities, real or personal property of customers of such Defendant transferred to or for the benefit of such Defendant and Relief Defendant in or at any time from March 1, 1996 to the date of the accounting, and the disposition by such Defendant and Relief Defendant of such assets, funds, securities, real or personal property;

(4)     All money, property, assets and other income transferred from such Defendant and Relief Defendant, including transfers to any bank account, brokerage account or other account, or to any individual, or entity, in or at any time from March 1,

1996, to the date of the accounting; and

(5)    The names and last known addresses of all bailees, debtors, and other persons and

entities which are currently holding the assets, funds or property of such

Defendant and Relief Defendant.

## VIII.

An Order appointing a receiver for WGTI, WGTC and Westridge, for the benefit of

investors, to take control of the business operations of WGTI, WGTC and Westridge and to

marshal, conserve, protect, and hold funds and assets obtained by the Defendants and the Relief

Defendants and their agents, and others involved in the misconduct alleged herein, wherever

such assets may be found, or, with the approval of the Court, dispose of any wasting asset in

accordance with the application and proposed order provided herewith.

## IX.

An Order permitting expedited discovery.

## X.

An Order enjoining and restraining each of the Defendants and the Relief Defendants,

and any person or entity acting at their direction or on their behalf, from destroying, altering,

concealing, or otherwise interfering with the access of the Commission to relevant documents,

books and records.

## XI.

An Order enjoining and restraining each of the Defendants, and their agents, employees,

attorneys, or other professionals, anyone acting in concert with them, and any third party from

filing a bankruptcy proceeding on behalf of the Defendants without at least 3 days notice to the

21

Plaintiff and approval of this Court.

## XII.

A Final Judgment ordering each of the Defendants and the Relief Defendants to disgorge their ill-gotten gains, plus prejudgment interest.

## XIII.

A Final Judgment ordering the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and as to Westridge, Greenwood and Walsh pursuant to Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## XIV.

Such other and further relief as to this Court deems just and proper.


Dated:  New York, New York
        February 25, 2009


By: _James Clarkson_____

        James Clarkson
        Acting Regional Director
        New York Regional Office
        Attorney for Plaintiff
        Securities and Exchange Commission
        3 World Financial Center, Suite 400
        New York, New York 10281-1022
        Telephone: (212) 336-1100
        Email: clarksonj@sec.gov

Of Counsel
David Rosenfeld
Paul Gizzi
Joseph Dever
Thomas Smith
Megan R. Genet

22